Futures Trading Commission v. John B. Wilson, et al. Good morning, Mr. Giordano. Yes. May it please the Court, Philip Giordano representing the appellants. I'd like to reserve two minutes for my argument. Your Honors, I'm here today on an appeal of the summary judgment decision that was rendered in the lower court of a motion by the Commodity Futures Trading Commission. The issues that I'd like this Court to focus upon are, there's a number of issues that go that are in error that we rely upon in our papers, but the issues that are key go to see enter whether or not the transactions were in connection with the alleged misstatements. And then materiality. Because the appellants argue that the district court erred in each of these findings and that this matter should be remanded for trial in the merits. First, this is a case in which the Commodity Futures Trading Commission is alleging that essentially an investment club, a group of individuals that put their money together, that Mr. Wilson had intentionally defrauded these investors by failing to register and then by issuing a certain series of statements, NAVs, net asset value statements, that had certain inaccuracies. These statements belie the fact that there was any see enter whatsoever, that Mr. Wilson had any intention or was reckless in any respect with respect to committing or making any violation of the anti-fraud provisions of the Commodity Exchange Act. First, if this Court looks to some of the issues that go to see enter, you have to find that Mr. Wilson was either reckless or had intentional conduct. And of these issues, I would focus upon a couple of matters. As compared to citing the cases which we rely upon in our briefs, first, the appellants were as committed to the investment vehicle as each of the investors. In the typical case, particularly where the SEC cases that are relied upon heavily by the Commodity Futures Trading Commission, the SEC cases are where there may be the perpetrators of the alleged fraud, whether it is an offering memorandum or otherwise, benefit or, in some respects, get some kind of gain out of the alleged fraud that is the subject of the case law that they are reciting. Mr. Wilson was as committed and had no gain as each of the investors in this case. That demonstrates good faith, and at a minimum. What do you say to the CFTC's argument that he got the benefit of maybe not being ousted from his position? In other words, if I understood their argument, even if he was financially as at risk as the other people? Well, that, unfortunately, though, is inconsistent with their argument, as the lower court found, that Mr. Wilson was allegedly in control. They've tried to essentially say that he exercised all executive authority, that he was in control. They deny the issue that the founders were making a collective decision-making. No, but they don't deny that he could be fired. He could be fired. Yeah, so that's what I'm saying is, why didn't he benefit from the fact that by giving these misleading statements, he wasn't fired? These misleading statements, number one, we challenge that there is falsity and that there is evidence. I understand that, but assuming there is. Assuming, for the sake of argument, that these statements are even false, the fact of the lack of determination of Mr. Wilson alone in his position demonstrates that there is not a consideration that he was gaining in any respect. He was investing with a group of family and friends, other individuals. Let's also look, if I might, Judge Barron, at the group of investors. First, there's a group that were brokers, that were also soliciting others. Certainly, these individuals would have knowledge, or presumably should have knowledge, about what is the investment vehicle that they are soliciting others upon. Secondly, institutional investors. Institutional investors have a duty to know, on behalf of those beneficiaries of their institutions, as to where and what are the parameters of what they're investing in. Number three, friends and family. Excuse me. Yes, Judge. He failed to register. He failed to register, yes. Okay, that's an admission. So why is SciENter relevant to that? As I understand it, SciENter is not relevant to his failure to register. On the separate count of the failure to register, which the CFTC is arguing is a strict liability, the failure to register, number one, should be considered in light of the unrefuted testimony of a third-party professional engaged by the appellants. Lillian Gonzales, it is unrefuted, there is no affidavits that refute her testimony that she was engaged. At the outset, there was an organizational meeting in which she raised the issue of whether or not registration was required, and that an attorney responded that he researched the issue. There were only two attorneys that it could possibly be, and the evidence is unclear as to which attorney it could be. I know your case hints at a reliance on counsel defense. Yes. Are you actually saying, because your brief doesn't say this, that your client relied on counsel's advice that he didn't have to register? If the brief is not clear, I apologize for that, Judge Lillian. Well, it's more than that. It's what arguments you actually are making. I apologize for that, Judge. Are you saying that that was his reason? The failure to register in reliance upon the statements of counsel, and that is raised when he also followed up with Kate Ryan, who is a CPA with expertise in securities and regulatory matters. In the evidence below, there is an email of February of 2008, in which Mr. Wilson specifically brings that to the attention of Ms. Gonzalez's associate, who has this expertise, and asks her whether or not registration, he's trying to confirm the information that was at the outset. Lillian Gonzalez, the record will reflect, also states that she relied, and she's a third-party professional engaged and an investor in this particular investment vehicle. She says she relied upon that representation in order to. What representation, please? Does the record show his background, Mr. Wilson's background? I'm sorry, Judge. Does the record establish Mr. Wilson's background? What did he do? He had previously had worked. He had been in the military, and he had previously engaged in investments. He had worked. He had been registered. How long had he engaged in investments? For just a matter of a short period of time, a number of years. I don't have the exact dates. A short period of time, a number of years? Can you tell? Does the record show one way or the other? I believe it does. I believe it's approximately two years that he was registered as a commodities trader, just a low-level commodities trader. And that is, that demonstrates. And he didn't know that he had to register for commodities? Well, but the issue is. No, the issue is that he knows. That's what establishes, apparently, at least gives us some idea about scienter. The issue is clearly that he did not know. There's an unrefuted e-mail that he sends that is in the. . . Was he registered anywhere? He was not registered during the time period of JVW. There was no registration that. . . There is no question that there was no registration. But that goes also to his good faith reliance, which goes to the advice of counsel defense. Yes, but you see, one of the problems is we have no statement from counsel anywhere that he advised your client that there was no need to register. The evidence below, the inferences go to the non-moving party. And this is on a summary judgment. It is not after trial. And with the inferences being made on behalf of the appellants, I would submit to you that the unrefuted statements of Lillian Gonzalez reinforce those inferences that are in the record below. There is the initial statements that Lillian Gonzalez and the testimony of Gonzalez. Then there is the follow-up with the e-mail. And then the disputed declaration submitted by Kate Ryan, which creates even further material facts as to whether or not the advice was sought. The CFTC submits in the record below a declaration of Kate Ryan, who is a CPA with expertise in commodities and securities. She has stated in a declaration, which doesn't even have her correct name, as misstatements of her dates of employ. And she states that he never asked her as to what was the advice regarding registration. Okay, so this is a I didn't know enough to ask defense, and therefore I can't have had cyanter. This is beyond that, though, Judge Lynch, because if you look at the e-mail, the February of 2008 e-mail of Kate Ryan, and if I might, if I can just reference you a little bit of the statements that are in there. The February 24, 2008 e-mail, which is Plaintiff's Exhibit No. 10, states in the subject matter investment registration concerns. It doesn't say SEC. It says investment registration concerns. And the defendants are inquiring about registration with the SEC or any other regulation, any other regulatory agency, and specifically says that what I don't want is bad news about registration concerns. He's bringing it to the attention. The e-mail has a hyperlink that is connected to investment clubs that describes some information, and it says he is interested in trying to find out, as we discussed many times, that he wants to play by the rules. So to a person who has done some level of research but acknowledges exactly in the six-element test of the Advice of Counsel Affirmative Defense. Okay. We've been talking about the failure to register. What about the misrepresentations made to the individual investors about the amount of money in the fund? The issue on the misrepresentations, the inaccuracies in the e-mails, have to be focused upon between a very narrow time period, September 13th to September 22nd. Number one, there is no transactions being made at that point in time. Number two, they had no right to do transactions because it's an illiquid investment, and they cannot liquidate their investments until the end of the quarter, which is the end of September. Number three, these statements are clearly not material because no investor at all seeks to withdraw. Under the operating agreement, it is undisputed. Is that the only way it could be material? Well, clearly, you have a group of investors. Now, the standard is a reasonable investor would consider this in his investment decision. But you have a group of investors, 20-plus investors, not one single one of which, after getting what is a substantial loss, knowing that the markets are completely in turmoil, makes no decision whatsoever to withdraw. There is no investor withdrawal. No, no, but that doesn't show it's not material. That shows they didn't act on material information. Well, they certainly had the information, and it is then with the September 22nd information, it is disclosed that there was an inaccuracy. But I'm just asking, the test for materiality can't depend on what people, the actual people did. It's whether reasonable people would find the information material. Agreed. And so you think in an investment club, I wouldn't want to know the accurate account of what the fund has? It is clear that, number one, knowing what a fund has is some information that an investor would want to know. So why isn't that the end of the story with respect to materiality? Because materiality goes to the level of what is – many of these statements, as the CFTC is relying upon, such as the May statement, those go to whether it is marked to the market or not. They are trying to compare closing positions as compared to open positions as to whether or not those numbers are accurate. The time period between September 13th and September 22nd on the one email that has an inaccuracy when the market is completely in turmoil is now considered to be, number one, it is not material because no one – it's not a – obviously there should be some information of subjectivity because these are individuals. And so their subjective view has some impact. But at the same time, Judge Barron, it has to be considered with respect to summary judgment. This isn't after a trial as to whether or not at least that material fact is understood. Thank you. I will respond to any further questions. Mr. Sutaria, good morning. Good morning, Mr. – excuse me. Good morning, Judge Shiraia. Ajay Sutaria representing the U.S. Commodity Futures Trading Commission. May it please the Court. I think I'd like to cover three points here. First, as my brother conceded, Wilson was an experienced futures market trader who had, the record shows, a futures trading account for three years in which he sustained losses that were never disclosed to his investors. He was registered with the commission as an associated person for approximately two years and nevertheless, he admitted in his depositions that he did not even consider registering with the commission and he simply chose not to register. And in his initial deposition with the commission, Mr. Wilson admitted that he did not consult anyone about whether or not to register. And as Judge Lynch pointed out, the commission's position as well as the district court's position is that 7 U.S.C. Section 6M is a strict liability statute. As the Second Circuit said in British American Commodity Options, the statute is a flat prohibition against using the means or instrumentalities of interstate commerce unless registered. There's no question that Mr. Wilson used the means or instrumentalities of interstate commerce. He's admitted that much in the record. So we submit at that point the failure to register violation is complete and there is no advice of counsel because there is no scienter required and as the court- Does the government, I understand that Wilson is definitely contending that he didn't have the right scienter based on a counsel advice defense or an advisor told him he didn't need to register defense with respect to registration. I couldn't tell in his brief whether he actually makes an argument against the finding that it's a strict liability crime. Does the government take a position as to whether he's waived any challenge to the district court on that ground? We do, Your Honor. In our opening brief, we pointed out that he addressed none of the cases or the district court's decision except in a very- So from your perspective, with respect to registration, the strict liability finding below is not challenged to us and therefore we would affirm that without in doing so deciding for all time that it's a strict liability crime. That's correct. The waiver, I think, would be dispositive. We believe the district court ruling is correct and if this court wanted to reach it, we believe the evidence- excuse me- that the district court's reading of the statute, the flat prohibition shall not operate unless registered is conclusive. We think the district court's analogy to the investment- to Section 203 of the Investment Advisors Act is correct as well and it's citation of Blavin. Yes, but what you were just told is if he's waived it, then we don't need to reach the issue of whether that is correct law or not. That is certainly true, Your Honor. And we also agree with the district court that the anti-fraud provisions were also violated. The undisputed evidence shows that Wilson lied to his investors at least eight times. He admitted to intentionally circulating a fictitious number and contemporaneously admitted that a net asset value statement he circulated was false. And we note the district court found eight instances of material misrepresentations. So we believe the liability findings as to fraud should be affirmed. I think in answer to Your Honor's question, Judge Barron, materiality does not require that someone act on information. The standard that my brother agrees with from TSC versus Northway is whether it's information that a reasonable investor would want to know. And the cases we cited, Princeton Economics International Limited and Argent and several others saying false net asset value information is information that a reasonable investor would want to know. Even if that is illiquid, I would commend the Brule case on that point. Assuming all of them are material, what is the standard in the government's view with respect to passing on material? The standard is from First Commodity Corp of Boston, either intentional or reckless. Intentional or reckless? That's correct, Your Honor. As the district court noted, in many of these instances, Mr. Wilson admitted that he was giving a false number. It was giving a false statement. So we think even the intentional part is satisfied. But as to the recklessness, Mr. Wilson received daily and monthly statements from his commodity broker, and instead of just passing those numbers along, he came up with, in some cases, wild exaggerations. For purposes of decision, you identify eight misstatements. That's correct, Your Honor. And I'm not saying this is what I think, but I'm just trying to understand how the law works here. Suppose we thought all eight were material, but the intentionality of the misstatement was true for five but not for three. Would that make any difference with respect to whether we would affirm the CFTC? No. If there were five material misstatements, then as to those five… So it just needs to be one? Certainly, that would state a claim for a violation of the Commodity Exchange Act. And I'd also point out, if you were to find intentionality as to some but not others, it's important to remember that every one of those statements was also charged as a violation of 7 U.S.C. Section 601B, which has been held not to require cianter. So this Court would then have to consider whether or not those statements operated as a fraud upon Mr. Wilson's investors. But to the not 601B, but to the prior one, what is the relevance of the fact that there are eight misstatements identified? Is that just one would have been… We're splitting out… There's no difference between finding one and finding eight? It may have some relevance to the amount of the civil monetary penalty, but certainly wouldn't have any relevance to the injunction or the restitution, Your Honor. And the civil monetary penalty is not before us? I don't believe my brother has challenged that as to its amount. So if I could actually turn to the restitution issue, we think in an otherwise harmonious opinion here the District Court struck a discordant note by suggesting that restitution is limited to the benefit unjustly received by defendants. I think the District Court may have been concerned with the practical problem. Where is the money for the restitution going to come from? There wasn't evidence before him that the defendant actually made ill-gotten gains here that could be redistributed. So the District Court essentially faults the Commission for not providing it with that information and says I have a lot of discretion in this area. Mind you, at one point he makes it sound like he may not have the authority to do this, but then he makes a statement that makes it clearer that he thinks he does have the authority, but this is not the case in which to do it. And in part it's not the case because you didn't give him the type of information he wanted to see. I'd point out under direct marketing concepts, Your Honor, we did satisfy the test of the information that's required, which is either gross customer receipts or the more friendly net customer receipts, and we did provide that. So I think that would be a difficult basis on which to affirm. But that's not necessarily the benefit that the defendant received. But, Your Honor, we believe under Porter and its progeny that that's not something we need to show. All we need to show is what the customers lost. That would be true in certain instances, I could see, where what the customer lost could reasonably be thought to be what the perpetrator of the fraud gained. But that wouldn't necessarily be true in every case. That's true, Your Honor. So the issue is, is this such a case? I guess maybe I'd like to back up. I think our reading of Porter and the other cases like Stefanczyk and Figge and Publishers Business Services is that the court should look solely to what the victim's lost. Right, but what was going on in those cases? Wasn't the harm a pretty good measure of the gain? We think the harm here is also a pretty good measure of the gain. Why? Because all of the gain. They all lost. They all lost. So how is the loss a good measure of anybody's gain if they all lost? The issue is not so much his gain as the fact that the defendants were misled into keeping their investments. But with respect to restitution, it's an unjust enrichment. So where's the unjust enrichment? What's the amount that he gained? I'm not saying disgorgement. You have to show some unjust enrichment, not just harm. He gained the right to invest all $2.08 million. And what's the value of that? That's, I think, what Judge Lynch is asking you. You didn't give to the district judge any account of how to figure out that. Are you saying just the overall count that it's incumbent on the district court to figure out some measure without any help from you? No. Our position is that the amount of net customer loss is presumptively the amount that the defendant is responsible for. That's what cases like Stefanczyk hold, is that unless the defendant shows that money was returned to the victims, the defendant is liable for the entirety of the loss. We think that's what Porter means by affording complete relief and restoring the status quo, or what the Fifth Circuit said in Amex and Huffman, to make customers whole. But he didn't have plausibly a right to all the amount of the fund. He had control of it, but nobody could say he gained the full $2 million. Because fraud was at issue, though, Your Honor. What we would say is that he gained the right to invest this money. Yeah. And then the question would be, what is his gain from the investment? And that's what I take it the district court is saying, I got no help from the government as to what that gain would have been. I think our position is that... The gain is the entirety of the fund amount? That's correct. Even though he didn't have the right to just, even under the contract, he didn't have the right to just take the $2 million and go to Hawaii with it. That is certainly true. That would be misappropriation. But we pointed out numerous cases in which many courts have adopted precisely that standard, making customers whole for all gain, even though they lost. In the context of a fund like this? That's correct, Your Honor. What's the case like that? There are a number of them. In the brief? They're in the brief, Your Honor. And that is because the defendant's victims here didn't have the chance to know that they were being sold a bill of goods, that their returns were not what Mr. Wilson promised. And that's why the district court found these to be significant violations of core provisions of the act, for which Mr. Wilson continues not to accept responsibility. So even if you're right, isn't it also the case that this is an equitable exercise by the district court and its choice as to this is reviewed only for abuse of discretion? Yes, Your Honor. It is reviewed only for abuse of discretion. Your argument seems to be that there's a mandatory duty, despite this equity consideration, to order these payments. Our position is certainly that it's the default position. This court in direct marketing concept says it's the default rule or the general rule. And here the district court seems to say in our reading of his opinion that there was a legal reason, citing Verity, that he was not able to do this. But in our position, Verity is contrary to Porter, the Supreme Court case. Apart from that ground for saying he abused his discretion, do you offer any other ground in the brief? We also point out that even under Verity, Verity was limited, both in that circuit and this one, to an instance where a middleman received fraud. So aside from Verity. In other words, if we don't think that he was. We also point out in our briefs that restitution is separate from disgorgement. Right. And under restitution, courts that have applied restitution have almost all said that the full amount of customer loss is what's compensable. Even in the fund context? Even in the fund context. And they don't look necessarily to the defendant's gain. So the argument is there's a per se abuse of discretion if you say no restitution? We certainly think if the court cited sort of fact-specific matters in this case or other considerations, which the district court did not, that would certainly be well within the court's discretion. Here we think, to us, the record indicates that you really relied on this legal principle from Verity to deny restitution to the defendant's victims. If the court has no further questions, I'll rest on our briefs as to the rest of the issues. Thank you. With respect to the issue of the advice of counsel as to whether or not there's a waiver or not, I just would cite the panel to pages 13 through 14 and 31 through 33 of our briefs. We did raise the issue. There is clearly, this is a summary judgment matter with respect to the issues of CIANTR in connection with and material. I don't want to review those again, but just go to first. It is clear there was no abuse of discretion with respect to the restitution. I'll rest upon our briefs with respect to that. As it goes to the civil penalty, the court did abuse its discretion, however, in denying the right of an evidentiary hearing. This court made a determination on a per statutory violation on civil penalties. I don't recall this being in your brief. I thought you waived any challenge to the statutory penalty. The standard for the evidentiary hearing was where we had raised the issue, and it is in our brief, Your Honor, where we had requested the court to be able to give us an opportunity to examine the different witnesses that were going to be relevant with respect to the issues of what would be appropriate. Given the fact that there was no victim that came forward, given the fact that Mr. Wilson, from what we know... I'm sorry. This is all shown on paper. What witnesses were you going to call and examine? Lillian Gonzalez, certainly. The amount of the loss to each of them could be stipulated. But whether the amount of the loss, the purpose of the civil penalty is whether or not it has a punitive as compared to the remedial aspect, which is the restitution. And given the fact that you have clearly no investor withdrew from the fund, given the fact you had professionals engaged, given the fact not one... Why would you need to call witnesses? My point is that we, resting on just a summary judgment argument, which is submitted with affidavits and some transcripts, the court entered into a statutory violation without giving us the opportunity to be able to demonstrate whether or not the first statute... You could put on evidence on why summary judgment wasn't appropriate. You apparently did not on this point. I'm sorry, Your Honor. What evidence would you have put on at summary judgment on this point of the statutory penalty to argue that there is a dispute? We had a significant... We would have sought to put on investors. We intended to put on... All right. Thank you. We're getting nowhere. I apologize, Your Honor. Thank you for your time.